```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
REBECCA C. MALLARD,
                                    Plaintiff,

            — against —                              MEMORANDUM and ORDER

MICHAEL J. ASTRUE,                                   10-CV-5036 (SLT)
Commissioner of Social Security,

                                    Defendant.
----------------------------------------------------------X
```

FILED IN CLERK'S U.S. ... ★ FEB 22 2012 BROOKLYN OFFICE

**TOWNES, United States District Judge:**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act after a denial of benefits at the administrative level. Defendant, the Commissioner of Social Security (the "Commissioner"), moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Plaintiff, Rebecca Mallard ("Mallard" "Plaintiff" or "Claimant"), now represented by counsel, cross-moves for judgment on the pleadings. For the reasons detailed below, both motions are denied. The case is remanded for further administrative proceedings consistent with this Memorandum and Order.

## BACKGROUND

Plaintiff was born in 1963 and completed high school. (Tr. 95, 108.)[1] She worked as a mail clerk from 1992 until 2008. (Tr. 104-05.) The position frequently required her to lift and carry 10 pounds, and throughout the day she could be required to lift up to 20 pounds of mail. (Tr. 105.) Plaintiff stopped working on February 18, 2008 when she alleged she could no longer "perform any job duties." (Tr. 104.) She filed for disability benefits on August 19, 2008 based primarily on pain in her left arm stemming from a car accident in November 2000. (Tr. 95-98,

---

[1] Citations to the administrative record are in the form "Tr. __".

103-04, 117.) According to the Plaintiff, the pain from this accident had subsided for several years, but returned beginning March 2006. (Tr. 117.) After Plaintiff's application for benefits was denied on November 20, 2008, she requested an administrative hearing, which was conducted before Administrative Law Judge ("ALJ") Jane Polisar on March 1, 2010. (Tr. 17-33.) The ALJ issued a decision denying benefits on March 17, 2010, and the decision became final on October 7, 2010 when the Appeals Council denied Plaintiff's request for review. (Tr. 1-14.)

Plaintiff was treated at the New York Downtown Hospital for her different impairments. She regularly visited the outpatient primary care center at the hospital where she was seen by various resident physicians. (Tr. 136-143, 145-162.) On at least three occasions the attending physician was Dr. Mi. (Tr. 136-137, 140-141, 143, 145-146). Dr. Mi submitted a letter indicating that Plaintiff has been under the care of the outpatient division since February 2006 for gastritis, anemia, hypertension and cervical radiculopathy. (Tr. 193.) Additionally, the outpatient facility referred Plaintiff to physical therapy, also at NYU Downtown Hospital, for pain in her left arm and shoulder. (Tr. 143.) Dr. Meng, a doctor in the Physical Medicine and Rehabilitation Center at New York Downtown hospital, confirmed that Plaintiff has been in "rehabilitation service," or physical therapy, since June 12, 2008. (Tr. 194.) Plaintiff also underwent left shoulder arthroscopic surgery on July 30, 2009 performed by Dr. Friedman, also of the New York Downtown hospital, and continued with physical therapy for the left arm after the surgery. (Tr. 187-192, 194.) The surgeon's notes and his surgery report are included in the record. (Tr. 186-192, 195.)

## DISCUSSION

Judicial review of disability insurance benefit determinations is governed by 42 U.S.C. § 1383(c)(3), which expressly incorporates the standards established by 42 U.S.C. § 405(g). In relevant part, § 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, the decision must be affirmed. The Supreme Court has defined "substantial evidence" to connote "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"Although factual findings by the Commissioner are binding when supported by substantial evidence, where an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ [as] [f]ailure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 188-189 (2d Cir. 2004) (internal quotation marks omitted); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) ("This deferential ["substantial evidence"] standard of review is inapplicable, however, to the [Commissioner's] conclusions of law.").

An ALJ "does not face a claimant…in an adversarial posture. Rather, the ALJ has a duty to ensure that the claimant receives 'a full hearing under the Secretary's regulations and in accordance with the beneficent purpose of the [Social Security] Act." *Peed v. Sullivan*, 778 F.

Supp. 1241, 1245 (E.D.N.Y. 1991) (citing *Gold v. Secretary of Health, Education, and Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)). When, as was the case at the administrative level here, "the claimant appears *pro se*, the ALJ has a heightened duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts....'" *Id.* (citing *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)). The ALJ "has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). "The regulations mandate that the ALJ make 'every reasonable effort' to obtain 'medical reports from a claimant's sources.' This obligation 'includes making an initial request, and then if needed, one follow up request ten to twenty days later if the medical records ha[ve] not yet been received." *Jackson v. Astrue*, No. 08-CV-0214, 2010 WL 814991, *1 (E.D.N.Y. March 8, 2010) (citing *Tessier v. Astrue*, No. 08-CV-0779, 2010 WL 419969, at *2 (W.D.N.Y. Jan. 29, 2010); 20 C.F.R. § 404.1512(d)(1) (internal citations omitted)).

Here, the ALJ failed to adequately develop the record. ALJ Polisar found that the claimant had three severe impairments: "left shoulder derangement (in a right handed individual)... gastritis[,] and cervical radiculopathy." (Tr. 10.) However, the record of the gastritis and cervical radiculopathy impairments is sparse. The record regarding the left shoulder and arm pain is more developed, yet important information is still missing. Specifically, the record does not contain any residual functional capacity ("RFC") evaluations from Plaintiff's treating physicians, and records and notes regarding all three impairments are limited.

The ALJ sent a form to New York Downtown Hospital requesting patient notes and testing results from 12/1/06 to 8/1/08 regarding the left arm injury and later sent another form

-4-

requesting patient notes from 8/08-9/08 with respect to the same left arm injury. (Tr. 135, 144.) However, there is no indication that records were requested regarding gastritis and cervical radiculopathy, nor are there any requests for RFC evaluations from any of the doctors. Further, at the hearing, the ALJ completely failed to question Plaintiff regarding cervical radiculopathy, and barely addressed Plaintiff's assertions of stomach difficulties. The record includes a report of a cervical spine MRI, which relates to the cervical radiculopathy impairment. The report indicates a bulging disc and mild neural foraminal narrowing. (Tr. 183.) It also notes that the referral doctor was Vadim Kushnerik, M.D., presumably also of New York Downtown Hospital since the form directs the report to Dr. Kushnerik at the New York Downtown Hospital address. *Id.* However, there are no treatment records from Dr. Kushnerik regarding referring Plaintiff for this cervical MRI nor discussing the post-MRI treatment decisions. There are some treatment notes from Dr. Mi, who treated Plaintiff for gastritis and cervical radiculopathy, as noted above, but there is nothing in the record to indicate how these two impairments impact Plaintiff's ability to carry out duties in the workplace.

The ALJ gave more attention to the left arm impairment, but the record on this point is still lacking. There is a short letter from Dr. Meng, mentioning the surgery performed by Dr. Friedman and briefly discussing that Plaintiff's range of motion is limited in her left arm "with tenderness and poor strength." (Tr. 194.) Dr. Meng also completed a General Medical Report, issued by the Social Security Administration, summarizing the history of the left arm impairment (onset and symptoms), clinical and laboratory findings, and treatment. (Tr. 178-180.) However, as with gastritis and cervical radiculopathy, there is no RFC evaluation reflecting the relationship of this injury to her capacity to work. Further, there are no treatment notes or medical charts

-5-

from Dr. Meng, even though Dr. Meng's letter indicates that Plaintiff had been receiving physical therapy at the Physical Medicine and Rehabilitation Center for almost two years prior to the March 1, 2010 ALJ hearing. (Tr. 17, 194.) As mentioned above, the ALJ requested patient notes and testing results regarding Plaintiff's left arm. Nonetheless, there is no indication that the ALJ sent a follow up request to completely develop the record as to the treatment for plaintiff's left arm. Such a request was necessary given the almost complete lack of documentation from Dr. Meng.

The ALJ did not invite medical testimony at the hearing, nor is there any suggestion that the she urged Plaintiff's treating physicians to file RFC evaluations or to testify. Further, the ALJ did not request that Plaintiff obtain the RFC's from the treating physicians herself. In light of Plaintiff's *pro se* status, such direction would have been especially warranted. As noted above, an ALJ's decision must meet the "substantial evidence" standard before it will be affirmed. 42 U.S.C. § 405(g). Given the ALJ's failure to adequately develop the record here, this Court does not have a sufficient basis for evaluating whether that standard is met.

This Court finds no merit in Plaintiff's arguments that the ALJ should have more fully developed the record as to Plaintiff's ability to sleep. Plaintiff's Memorandum of Law in Support of her Cross-Motion for Judgment on the Pleadings and in Opposition to the Commissioner's Motion for Judgment on the Pleadings ("Pl. Mem. of L.") at 16. Plaintiff does not allege a sleep disorder, rather her complaints reveal that she has trouble sleeping secondary to pain from the left-arm impairment. (*Id.*; Tr. 110-111, 115.)

For the above reasons, the record upon which the ALJ made her determination is not sufficient. The case is remanded to the ALJ to fulfill her obligation to develop the record. Only

-6-

after the record is adequately developed can the ALJ decide whether Plaintiff's impairments, either singly or in combination, render her disabled for the purpose of receiving social security benefits.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendant's and Plaintiff's motions for judgment on the pleadings are denied and the matter is remanded to the Commissioner for further proceedings consistent with this opinion. On remand, the Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

s/ SLT

/ SANDRA L. TOWNES
United States District Judge

Dated: February 21, 2012
Brooklyn, New York